**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| NISHARAHMED GHIYA,<br><br>Plaintiff,<br><br>v.<br><br>TD BANK, N.A.,<br><br>Defendant. | No. 25-cv-4056<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is defendant TD Bank, N.A.'s ("TD Bank") motion to dismiss plaintiff Nisharahmed Ghiya's ("Plaintiff") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 6; ECF No. 6-1 ("Moving Br."); *see also* ECF No. 3 at 6–18 ("Compl."). Plaintiff opposed the motion, ECF No. 11 ("Opp'n Br."), and TD Bank replied, ECF No. 12 ("Reply Br."). The Court decides the motion without oral argument. Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons stated below, the Court will grant in part and deny in part TD Bank's motion to dismiss.

## I.   BACKGROUND

### A.   Plaintiff's Allegations

In March 2024, Plaintiff applied for employment at what he thought was Jetti Resources LLC ("Jetti"). Compl. ¶ 10. However, as Plaintiff later discovered, he was actually communicating with a "fraudulent enterprise of scammers" (the "Scammers") "posing as Jetti." *Id.* This dispute relates to the fallout from Plaintiff's interaction with this fraudulent enterprise.

On March 26, 2024, the Scammers interviewed Plaintiff for employment. *Id.* ¶ 11. Two days later, Plaintiff "completed a technical assessment which [t]he Scammers required . . . as a

part of the application process." *Id.* ¶ 12.  Shortly thereafter, the Scammers—"us[ing] the names of real Jetti employees"—offered Plaintiff a position.  *Id.* ¶ 13.

On April 2, 2024, the Scammers "sent Plaintiff a check for $2,461.10, which [appeared] to be from Jetti and seemingly originated [from] Generations Federal Credit Union." *Id.* ¶ 14.  The Scammers, still posing as Jetti employees, told Plaintiff to use "the money . . . to purchase equipment and training materials for his new position." *Id.*  Shortly thereafter, Plaintiff deposited the check into his account at TD Bank.  *Id.* ¶¶ 8, 16–17.  Like any TD Bank account holder, Plaintiff and TD Bank entered into a Personal Deposit Account Agreement (the "PDAA") when Plaintiff opened his account.[1]  *See* Opp'n Br. at 2; ECF No. 6-2, Ex. A ("PDAA").  The PDAA "govern[s] [an account holder's] deposit relationship with" TD Bank, *see generally* PDAA, and provides that "TD Bank would make funds from Plaintiff's deposits available to Plaintiff no later than the first business day after the day TD Bank received the deposit," Moving Br. at 2 (citing PDAA at 16).  It also provides that "if any deposit was ultimately returned or dishonored, then TD Bank would reverse any provisional credit for that item and deduct the amount of the dishonored check from Plaintiff's account." *Id.* (citing PDAA at 2).

---

[1] As TD Bank acknowledges, Plaintiff's complaint does not mention or "explicitly rel[y]" on the PDAA.  Moving Br. at 2 n.1.  Instead, TD Bank argues that the Court may consider the PDAA because the agreement is integral to the complaint.  *Id.*; *see In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.  However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" (citation omitted)).  Plaintiff's opposition does not appear to contest this point.  *See* Opp'n Br. at 1–2, 8–9, 11–12, 15.  Thus, the Court will consider the PDAA as integral to the complaint.  *See Hughes v. TD Bank, N.A.*, 856 F. Supp. 2d 673, 677 (D.N.J. 2012) (considering PDAAs where "[t]he parties d[id] not dispute that the Court may examine the PDAAs attached to Defendant's motion papers"); *see also In re Rite Aid Corp. Sec. Litig.*, No. 22-4201, 2025 WL 968306, at *1 n.5 (E.D. Pa. Mar. 31, 2025) ("Failing to substantively respond to an argument contained within a motion to dismiss constitutes a waiver to those claims or arguments.").

After sending Plaintiff the check, the Scammers "instructed Plaintiff to send" $2,461.10 via Zelle "to their IT department for his equipment." Compl. ¶ 15. "Sensing that something seemed fishy, Plaintiff" called TD Bank and "explained [his] situation." *Id.* ¶¶ 16–17. In response, a TD Bank "representative told Plaintiff that the check was legitimate and that it cleared." *Id.* ¶ 17. According to Plaintiff, TD Bank's representative "told him that he could Zelle the money, signaling that the [Scammer's] check was legitimate." *Id.*

Given TD Bank's representations, Plaintiff "initiated two Zelle payments, each in the amount of $1,000.00." *Id.* ¶ 18; *see id.* ¶ 41 ("Plaintiff would not have sent the money without [TD Bank's] assurances that the check cleared and that he could send the money, signaling that the check was determined to be legitimate."); *see also id.* ¶¶ 44–46, 48–49. But still "[f]eeling uncomfortable . . . , Plaintiff called" TD Bank once more (roughly an hour and a half after his initial call). *Id.* ¶ 19. "This time, [a TD Bank] representative told him that the [Scammer's] check had not yet cleared."[2] *Id.* Plaintiff then cancelled his "second Zelle payment, though the first had already" gone through. *Id.* ¶ 20. Accordingly, Plaintiff "open[ed] a dispute for the initial $1,000.00 Zelle transfer" over the phone on April 4, 2024. *Id.* ¶¶ 21–22.

On April 8, 2024, TD Bank informed Plaintiff that it would require "a police report to . . . cover[]" his losses from the first Zelle payment. *Id.* ¶ 25. In response, Plaintiff contacted the Raritan Township Police Department and on April 16, 2024, the department "produced a police report." *Id.* ¶ 26.

According to Plaintiff, TD Bank "never responded to him" regarding the dispute he opened on April 4. *Id.* ¶ 28. For instance, Plaintiff states that TD Bank never informed him "as to whether

---

[2] Based on this second call, Plaintiff also alleges that TD Bank "knew [or should have known], at the time its representative made the misrepresentation, that the check had not cleared." *Id.* ¶¶ 42, 50.

an error occurred or provided him with the documents relied upon in making that determination . . . , despite numerous requests." *Id.* Given the bank's inaction, Plaintiff sent TD Bank "a letter [on June 12, 2024,] to dispute the transaction again, reiterating that he previously disputed the transaction over the phone and [asked] TD Bank [to] send him the documents they relied upon to make their determination." *Id.* ¶ 29. He followed up with "nearly identical dispute letters" on June 17, 2024; June 24, 2024; and February 5, 2025, "once again requesting documents and more information from" TD Bank.[3] *Id.* ¶¶ 30, 32.

According to Plaintiff, TD Bank never responded to these letters, never "made any good faith investigation into the transaction," and never "provisionally credited [his TD Bank] account." *Id.* ¶¶ 28, 33–36. Plaintiff states that he "experienced severe emotional distress due to the" $1,000 loss he suffered from the first Zelle payment to the Scammers. *Id.* ¶ 37.

## B.    Procedural History

On April 2, 2025, Plaintiff filed his complaint in the Superior Court of New Jersey, Essex County. ECF No. 1. In his complaint, Plaintiff asserts four claims for relief. First, he asserts a claim for fraudulent misrepresentation. Compl. ¶¶ 39–46. Second, he asserts a claim for negligent misrepresentation. *Id.* ¶¶ 47–53. Third, he asserts a claim for violations of the Electronic Fund Transfer Act ("EFTA"). *Id.* ¶¶ 54–67. And fourth, he asserts a claim for violations of the New Jersey Consumer Fraud Act ("NJCFA"). *Id.* ¶¶ 68–76. Plaintiff seeks damages, attorney's fees, and litigation expenses and costs. *Id.* § IX (Prayer for Relief). TD Bank removed the state-court action to this Court based on its federal question jurisdiction on May 9, 2025, *see* ECF No. 1 at 1, and moved to dismiss the complaint for failure to state a claim for relief under Rule 12(b)(6) on June 13, 2025, ECF No. 6.

---

[3] Plaintiff also sent a follow-up letter on October 2, 2024. Compl. ¶ 30. However, that letter "was returned to sender on December 12, 2024." *Id.*

## II.    LEGAL STANDARD

A motion under Rule 12(b)(6) seeks dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim upon which relief can be granted, a pleading must generally "contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). To do so, the pleading must state a plausible claim, meaning it must contain "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). However, when a claim sounds in fraud, the pleading "must state with particularity the circumstances constituting [the] fraud,' although 'intent, knowledge, and other conditions of a person's mind may be alleged generally.'" *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017) (quoting Fed. R. Civ. P. 9(b)). In other words, a pleading must support fraud allegations "with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where[,] and how of the events at issue." *Id.* (citation omitted).

The Court conducts a three-step analysis when considering a Rule 12(b)(6) motion. First, the Court "must 'tak[e] note of the elements [the] plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (quoting *Iqbal*, 556 U.S. at 675). Second, the Court disregards formulaic recitations of a claim's elements; legal conclusions; and allegations that are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327–28 (3d Cir. 2022) (citation omitted). Third, the Court assumes the truth of the complaint's "remaining allegations," construes "them in the light most favorable to the plaintiff," draws "all

5

reasonable inferences in the plaintiff's favor," and then determines whether the plaintiff has stated a viable claim for relief. *Id.* at 328.

## III.   DISCUSSION

Plaintiff asserts the following four claims for relief: (1) fraudulent misrepresentation, (2) negligent misrepresentation, (3) violations of the EFTA, and (4) violations of the NJCFA. *See* Compl ¶¶ 39–76. For the reasons stated below, the Court will dismiss all claims except for Plaintiff's EFTA claim.

### A.   The Fraudulent and Negligent Misrepresentation Claims (Counts One and Two)

The Court will dismiss Plaintiff's fraudulent and negligent misrepresentation claims as barred by New Jersey's economic loss doctrine, which "defines the boundary between the overlapping theories of tort law and contract law." *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 244 (3d Cir. 2010) (citation omitted). The doctrine "provides that, when parties have entered into a contract, contract law rather than tort law governs disputes within the subject matter of the contract, and a party cannot use a tort claim to bypass the legal relationship created by the contract." *Cudjoe v. Ventures Tr. 2013I-H-R by MCM Cap. Partners, LLP*, No. 18-10158, 2019 WL 949301, at *4 (D.N.J. Feb. 26, 2019); *see also E. Coast Advanced Plastic Surgery v. Aetna, Inc.*, No. 17-13676, 2018 WL 3062907, at *4 (D.N.J. June 21, 2018) ("At its core, the doctrine prohibits recovery of damages in tort, such as fraud, when the alleged misrepresentations relate directly to performance under a contract."); *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 489 A.2d 660, 672 (N.J. 1985) ("Contract principles [as opposed to tort law] are generally more appropriate for determining claims for consequential damage that the parties have, *or could have*, addressed in their agreement." (emphasis added)). The doctrine prevents a party from "seeking to enhance the benefit of the bargain [he] contracted for with" his counterparty. *Saltiel v. GSI*

6

*Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002); *see Saratoga at Toms River Condo. Ass'n, Inc. v. Menk Corp.*, No. A-5421-11T3, 2014 WL 3510872, at \*5 (N.J. Super. Ct. App. Div. July 17, 2014) ("[T]he Economic Loss Doctrine is based on the principle that economic expectations between parties to a contract are not entitled to supplemental protection by negligence principles."). "[T]he 'critical issue' in analyzing whether the economic loss doctrine applies concerns whether the tort claim[s] arise[] from conduct 'extraneous to the contract.'" *Symbiont Sci. Eng'g & Constr., Inc. v. Ground Improvement Servs., Inc.*, 723 F. Supp. 3d 363, 380 (D.N.J. 2024) (citation omitted).

Here, Plaintiff's tort claims are not extraneous to the PDAA. Plaintiff's fraudulent and negligent misrepresentation claims center on one alleged statement: a TD Bank representative's incorrect statement that "that the [Scammer's] check was legitimate and that it cleared." Compl. ¶ 17; *see id.* ¶¶ 40, 48; Opp'n Br. at 3. But the PDAA, which governs Plaintiff's banking relationship with TD Bank, states that "[a]ny item that [the bank] accept[s] for deposit is subject to *later verification*." PDAA at 2 (emphasis added). Indeed, several provisions of the PDAA explain that TD Bank may decide to dishonor a deposited check at a later date. *See, e.g.*, *id.* at 2 ("We will reverse any provisional credit we have given for an item deposited into your Account if we do not receive final credit for that item."); *id.* at 3 ("If you deposit a check or item in your Account that the drawee bank returns unpaid for any reason (called 'dishonor'), the amount of the dishonored check or item will be deducted from your Account. . . . Typically, the Bank will cash checks drawn on other banks for its Customers who have adequate available funds in their Account(s). If any such check should be returned by the paying bank for any reason, the Bank will charge you a fee . . . In addition, the Bank will debit the amount of the returned check from your Account."); *id.* at 18 ("If a check or other item you deposited to your Account is returned to

7

us unpaid after the funds have been made available to you, the amount of the check or other item will be deducted from your Account."). As such, Plaintiff's tort claims "are not distinct from or extrinsic to the contractual relationship and the obligations that arose from the" PDAA. *Heyman v. Citimortgage, Inc.*, No. 14-1680, 2019 WL 2642655, at *30 (D.N.J. June 27, 2019).

Plaintiff correctly notes that "the economic loss doctrine [does] not apply if the 'breaching party owe[d] an independent duty imposed by law.'"[4] Opp'n Br. at 7 (second alteration in original) (quoting *Saltiel*, 788 A.2d at 280). However, he has failed to identify any independent duty TD Bank owed to him that would allow him to circumvent the economic loss doctrine.

For instance, Plaintiff asserts that banks like TD Bank owe a duty "of reasonable care to their customers," which is "outside the scope" of the PDAA. Opp'n Br. at 9. Plaintiff argues that TD Bank's "failure to protect [his] funds from fraudulent activities and lack of responses to [his] pleas for explanations were [a] breach of" these duties. *Id.* But under New Jersey law, banks generally do not owe depositors special duties where the parties' relationship is defined by contract. *See Drosos & Assocs., PC v. TD Bank NA*, No. 23-1275, 2024 WL 863319, at *4 (D.N.J. Feb. 29, 2024) ("[A] bank has no obligation to manage, supervise, control or monitor the financial activity of its debtor-depositor and is not liable to its depositor in negligence for failing to uncover a major theft." (citation omitted)); *see, e.g.*, *Alston v. TD Bank, N.A.*, No. 24-6721, 2025 WL 481048, at *5 (D.N.J. Feb. 13, 2025); *Beaman v. Bank of Am., N.A.*, No. 21-20561, 2024 WL 3219224, at *17 (D.N.J. June 28, 2024) ("Plaintiffs have not sufficiently alleged that the contractual relationship between Plaintiffs and BOA implicated an independent, reasonable duty

---

[4] There are other exceptions to the economic loss doctrine. *See, e.g.*, *Intimateco LLC v. Apparel Distribution, Inc.*, No. 23-1759, 2023 WL 7986336, at *7 (D.N.J. Nov. 17, 2023); *Minn. Life Ins. Co. v. Cooke*, No. 20-14326, 2021 WL 5122070, at *8 (D.N.J. Nov. 4, 2021). However, Plaintiff only invokes the independent duty exception. Opp'n Br. at 6–9.

of care irrespective of the duties under the Account Agreement."); *Azar v. Chase Bank, N.A.*, No. 23-470, 2023 WL 5623240, at *3 (D.N.J. Aug. 31, 2023) ("Here, Plaintiffs' alleged relationship with Chase is that of individuals who maintained checking and savings accounts with the bank. Chase's Account Agreement is 'the contract that governs [any deposit] account' with Chase, including checking and savings accounts, so Plaintiffs' relationship with Chase is governed by this contract." (alteration in original)).

Plaintiff also states that TD Bank "breached its duty to [him] to prevent fraud by making false representations regarding the check" during his first call with the bank. Opp'n Br. at 8. He also claims more generally that TD Bank breached its "duty to provide accurate information regarding the legitimacy of the deposited check[] and to safeguard him from fraudulent activity." *Id.* And Plaintiff states that TD Bank breached its "duty to investigate [Plaintiff's dispute of the first Zelle payment] in good faith[] and to disclose and provide documents of the investigations into" the Zelle payments. *Id.* However, as explained above, banks generally do not owe depositors independent legal duties. Moreover, Plaintiff provides no support for this set of alleged independent duties. *See Schneider's Dairy, Inc. v. Serv. Pers. & Emps. of Dairy Indus., Teamsters Loc. Union No. 205*, No. 13-1325, 2013 WL 6485367, at *2 n.1 (W.D. Pa. Dec. 10, 2013). Therefore, the Court concludes that New Jersey's economic loss doctrine bars Plaintiff's fraudulent and negligent misrepresentation claims.

## B.    The EFTA Claim (Count Three)

The Court finds that Plaintiff has stated a viable EFTA claim. "The EFTA was enacted 'to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems,' especially regarding individual consumer rights." *Beaman*, 2024 WL 3219224, at *9 (citation omitted). The act "provides a private cause of action

9

to [a] customer seeking damages for [a] financial institution['s] unauthorized electronic transfer of funds from the customer's account." *Id.*; *see* 15 U.S.C. § 1693m.

Plaintiff's EFTA claim centers on two of the act's provisions: the act's "error resolution obligations" provision, Opp'n Br. at 15; *see* Compl. ¶¶ 58–65, and the act's provisional recrediting provision, Compl. ¶¶ 2, 34, both of which are codified in 15 U.S.C. § 1963f. With respect to the EFTA's error resolution provision, Plaintiff argues that he has stated a viable EFTA claim based on TD Bank's alleged failure to (1) respond to Plaintiff's "oral and written notice" of a "fraudulent transaction" and (2) "provide the results of its investigation or disclose the documentation it relied upon in making its determination." Opp'n Br. at 16–17 (citing 15 U.S.C. §§ 1693f(a)(3) and (d)). With respect to the provisional recrediting provision, Plaintiff alleges that TD Bank "never provisionally credited [his] account, as required by the EFTA." Compl. ¶ 34; *see* 15 U.S.C. § 1693f(c). In response, TD Bank argues that dismissal is appropriate for two reasons. First, TD Bank argues that Plaintiff's "EFTA claim fails because Plaintiff admittedly authorized the transfer at issue." Moving Br. at 12. Second, the bank argues that Plaintiff's "EFTA claim . . . fails . . . because TD Bank fully complied with its obligations under Section 1693f."[5] *Id.* at 14. The Court rejects both arguments and will allow Plaintiff's EFTA claim to proceed.

---

[5] TD Bank makes two additional points. First, TD Bank argues that "to the extent the EFTA claim is based on an alleged failure to provisionally credit Plaintiff's account, such [a] claim fails because TD Bank was not required to provisionally credit Plaintiff's account." Moving Br. at 15. TD Bank is correct that a financial institution's obligation to provisionally recredit a consumer's account pending its investigation of a qualifying error is not absolute; it applies only if the financial institution decides to forgo the standard investigatory requirements of 15 U.S.C. § 1693f(f)(a) and (b). *See* 15 U.S.C. § 1693f(a) ("A financial institution which requires written confirmation in accordance with the previous sentence need not provisionally recredit a consumer's account in accordance with subsection (c) . . . ."); *id.* § 1693f(c) ("If a financial institution receives notice of an error in the manner and within the time period specified in subsection (a), it may, in lieu of the requirements of subsections (a) and (b), within ten business days after receiving such notice provisionally recredit the consumer's account for the amount alleged to be in error."). However, at this early stage, Plaintiff has plausibly alleged that TD Bank failed to satisfy its EFTA

First, the Court finds that Plaintiff has plausibly alleged an "error" that triggers TD Bank's error resolution obligations under the EFTA and the act's "provisional recredit[ing]" provision. Section 1963f applies to "errors," which the EFTA defines as one of the following:

> (1) an unauthorized electronic fund transfer; (2) an incorrect electronic fund transfer from or to the consumer's account; (3) the omission from a periodic statement of an electronic fund transfer affecting the consumer's account which should have been included; (4) a computational error by the financial institution; (5) the consumer's receipt of an incorrect amount of money from an electronic terminal; (6) a consumer's request for additional information or clarification concerning an electronic fund transfer or any documentation required by this subchapter; or (7) any other error described in regulations of the Bureau.

15 U.S.C. § 1963f(f).  Plaintiff alleges that he "request[ed] . . . additional information or clarification concerning" his first Zelle transfer.  *Id.* § 1963f(f)(6); *see, e.g.*, Compl. ¶¶ 29–30, 32. Thus, Plaintiff's allegations are sufficient to trigger § 1693f via subsection (f)(6).  *See Yip v. Bank of Am., N.A.*, No. 21-1254, 2025 WL 3723769, at *8–9 (D. Nev. Sept. 30, 2025); *Cook v. USAA Fed. Sav. Bank*, No. 22-1469, 2024 WL 4201410, at *5 (D. Md. Sept. 16, 2024); *Ali v. USAA Fed. Sav. Bank*, No. 16-420, 2016 WL 5464602, at *4 (D. Ariz. Sept. 29, 2016).

Second, the Court finds that Plaintiff has plausibly alleged that TD Bank failed to comply with § 1963f.  For instance, Plaintiff alleges that TD Bank failed to "investigate the alleged error, determine whether an error . . . occurred, and report or mail the results of such investigation and determination to the consumer within ten business days." 15 U.S.C. § 1963f(a)(3); *see, e.g.*, Compl ¶ 35 ("Defendant has not made any good faith investigation into the transaction, as Required by the EFTA.").  He also alleges that TD Bank failed to "provisionally recredit [his] account for the

---

obligations.  Second, TD Bank also attaches to its moving brief letters it sent to Plaintiff dated April 8 and 12, 2024, concerning Plaintiff's dispute of the first Zelle transfer.  *See* ECF No. 6-2, Ex. C.  Based on these letters, the bank argues that Plaintiff is incorrect that "TD Bank never responded to his subsequent dispute requests."  Moving Br. at 15.  These letters, however, are not integral to the complaint.  *Burlington Coat Factory*, 114 F.3d at 1426.  Moreover, Plaintiff disputes their veracity.  *See* Opp'n Br. at 17.  Therefore, the Court cannot consider them in evaluating the motion to dismiss.  *Lutz*, 49 F.4th at 327–28.

11

amount alleged to be in error . . . pending the conclusion of its investigation and its determination of whether an error has occurred" within "forty-five days after receipt of notice of the error."  15 U.S.C. § 1963f(c); *see, e.g.*, Compl ¶ 34 ("[TD Bank] never provisionally credited Plaintiff s account . . . .").  Moreover, he alleges that TD Bank failed to provide "an explanation of its findings within 3 business days after the conclusion of its investigation." 15 U.S.C. § 1693f(d); *see, e.g.*, Compl. ¶¶ 2, 33, 36.

As such, the Court will allow Plaintiff's EFTA claim to proceed.  *See Gale v. Hyde Park Bank*, 384 F.3d 451, 453 (7th Cir. 2004) (reversing a district court's dismissal of an EFTA claim where plaintiff plausibly alleged that defendant-bank's explanation of its "no error" finding was inadequate); *Creager v. Bank of Am. NA*, No. 21-2101, 2023 WL 12177315, at *4 (D. Ariz. Dec. 19, 2023) (denying a motion to dismiss EFTA claims where "[s]ome Plaintiffs allege[d] or impl[ied] that they never received notice of the results of Defendants['s] investigations" in "violation of § 1693(a)" and most "Plaintiffs . . . allege[d] that they did not receive further information about the investigation upon request" in "violation of § 1693f(d)").

### C.      The NJCFA Claim (Count Four)

The Court finds that Plaintiff has failed to state a viable NJCFA claim.  "The [NJCFA] was enacted to protect consumers from improper selling practices by 'prevent[ing] deception, fraud, falsity, whether by acts of commission or omission, in connection with the sale and advertisement of merchandise and real estate.'"  *Talalai v. Cooper Tire & Rubber Co.*, 823 A.2d 888, 897 (N.J. Super. Ct. 2001) (second alteration in original) (citation omitted).  To do so, the act prohibits "any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate."  N.J. Stat. Ann. § 56:8-2.

Relevant here, the NJCFA defines "merchandise" broadly to include "any . . . services or anything offered, directly or indirectly[,] to the public for sale." *Id.* § 56:8-1(c); *see also MZL Cap. Holdings, Inc v. TD Bank, N.A.*, 734 F. App'x 101, 105 n.10 (3d Cir. 2018).

"In order to prevail on a claim under [the NJCFA], a plaintiff must satisfy three elements": (1) "unlawful conduct [under the act] on the part of the Defendant," (2) "an ascertainable loss on the part of the Plaintiff," and (3) "a causal relationship between the unlawful conduct and the ascertainable loss." *D'Argenzio v. Bank of Am. Corp.*, 877 F. Supp. 2d 202, 208 (D.N.J. 2012). Moreover, a plaintiff must plead an NJCFA claim with particularity. *See Migliore by Migliore v. Vision Solar LLC*, 160 F.4th 79, 90 (3d Cir. 2025). Here, Plaintiff has failed to plead a plausible NJCFA claim because he alleges no wrongdoing covered by the act. More specifically, Plaintiff's allegations of wrongdoing—*e.g.*, that a TD Bank representative "[m]isrepresent[ed] that [the Scammer's] check [he] deposited had cleared when it had not," Compl. ¶ 74(a)—do not relate to the "sale or advertisement" of any products or services. N.J. Stat. Ann. § 56:8-2; *see Wilkins v. Navy Fed. Credit Union*, No. 22-916, 2023 WL 239976, at *16 (D.N.J. Jan. 18, 2023) (dismissing NJCFA claim in part because "Plaintiff . . . failed to allege any unlawful conduct" under the act); *Scalercio-Isenberg v. Select Portfolio Servicing, Inc.*, No. 20-4501, 2021 WL 268155, at *2 (D.N.J. Jan. 27, 2021) (similar). Instead, Plaintiff's allegations relate to the provision of banking services he had already contracted for with TD Bank. *See, e.g.*, Compl. ¶¶ 18, 21, 27–35. Thus, the Court will dismiss Plaintiff's NJCFA claim.

## IV.    CONCLUSION

Accordingly, for the reasons stated above, **IT IS** on this 28th day of April, 2026;

**ORDERED** that the TD Bank's motion to dismiss (ECF No. 6) is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that Plaintiff's claims for fraudulent misrepresentation, negligent misrepresentation, and violations of the NJCFA are **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED** that Plaintiff's EFTA claim is not dismissed and may proceed; and it is finally

**ORDERED** that Plaintiff shall have sixty (60) days from entry of this Opinion and Order to submit an amended complaint that addresses the deficiencies identified herein.  Insofar as Plaintiff submits an amended complaint, he shall also provide a form of the amended complaint that indicates in what respect it differs from the current complaint, by bracketing or striking through materials to be deleted and underlining materials to be added.  *See* L. Civ. R. 15.1(b)(2).

**SO ORDERED.**

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**